PACE REALTY GROUP, INC., *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. THE PROPERTY TAX APPEAL BOARD, Defendant-Appellee and Cross-Appellee (The Lake County Board of Review *et al.*, Defenadnt-Appellants and Cross-Appellees).

Second District   Nos. 2—98—0946, 2—98—0830 cons.

Opinion filed July 15, 1999.

Scott A. Nemanich, *of Hinshaw & Culbertson,* of Chicago, for appellant Hawthorn Community Consolidated School District 73.

Michael J. Waller, State's Attorney, of Waukegan (Jacob Marc Steinfink, Assistant State's Attorney, *of counsel),* for appellant Lake County Board of Review.

Joseph E. Kolar, *of Baizer & Kolar, P.C.,* of Highland Park, for appellee Pace Realty Group, Inc.

James E. Ryan, Attorney General, of Chicago (John P. Schmidt, Assistant Attorney General, *of counsel),* for appellee Property Tax Appeal Board.

JUSTICE GEIGER delivered the opinion of the court:

The defendants Lake County Board of Review (LCBOR) and Hawthorne Community School District 73 (Hawthorne School District) (collectively, the defendants) appeal from the March 11, 1998, and June 24, 1998, orders of the circuit court of Lake County granting the plaintiffs relief on their complaint for administrative review. As a result of the trial court's orders, the plaintiffs received a reduction in the assessment established by the LCBOR on 51 separate properties. On appeal, the defendants argue that (1) the trial court did not have jurisdiction to hear the administrative review action because the plaintiffs sought a change in assessed valuation in excess of $300,000; and (2) the trial court erred in ruling that the Property Tax Appeal Board (PTAB) had improperly relied upon certain comparable properties provided by the LCBOR. The plaintiffs have filed a cross-appeal,

arguing that the LCBOR should have been held in default for failing to comply with the PTAB's administrative rules. We affirm.

## BACKGROUND

The plaintiffs are owners of 51 apartment buildings in a 54-building apartment complex in Vernon Hills. Thirty of these buildings are located on Westmoreland Drive. The remaining 21 buildings are located on either Court of Spruce or Court of Birch. Each individual apartment building has its own property identification number (PIN) for tax assessment purposes. Larry Smilgius, vice-president of Pace Realty Group, Inc. (Pace), owns several of these buildings. The other buildings are owned by other individuals and entities that are also plaintiffs herein. Pace provides property management services to all of the buildings.

After receipt of the tax assessment for the 1994 tax year, Smilgius believed that all of the buildings in the 54-building complex had been overassessed. The assessments were as follows:

| Location | No. of Building | Assessment |
|---|---|---|
| Courts of Birch and Spruce | 24 | $68,349 per building |
| 830-985 Westmoreland | 16 | $94,389 per building |
| 805-915 Westmoreland | 6 | $103,198 per building |
| 840-950 Westmoreland | 8 | $105,420 per building. |

Smilgius sent a letter to each property owner in the complex requesting him or her to appeal his or her 1994 assessment. All of the owners of the buildings on Westmoreland Drive appealed their assessments as did the owners of 21 of the 24 buildings on Court of Spruce and Court of Birch. The owners of the buildings at 709, 715, and 790 Court of Spruce did not appeal their assessments. Thus, in total, 51 of the 54 buildings in the complex appealed their assessments for the 1994 tax year. The assessments of all 51 properties were subsequently upheld by the LCBOR.

On February 24, 1995, the plaintiffs filed 51 separate petitions with the PTAB. One petition was filed for each of the 51 separate apartment buildings detailed above. In each of these petitions, the plaintiffs alleged that the assessments on their properties were substantially higher than neighboring comparable properties. The plaintiffs argued that their assessments violated the constitutional guarantees of uniformity of taxation and equal protection of the laws. The plaintiffs requested that their assessments be reduced to the following levels:

| Courts of Birch and Spruce | $28,409 per building |
| 830-985 Westmoreland | $43,982 per building |
| 805-915 Westmoreland | $51,163 per building |
| 840-950 Westmoreland | $53,528 per building. |

Pursuant to section 16—180 of the Property Tax Code (the Code) (35 ILCS 200/16—180 (West 1996)), the LCBOR served a copy of the plaintiffs' petitions to all taxing districts shown on the last available tax bill. After receipt of this notice, Hawthorne School District intervened in 21 of the 51 petitions. Specifically, the Hawthorne School District intervened in the petitions relating to the buildings located on Court of Birch and Court of Spruce.

The PTAB consolidated the 51 petitions and held a hearing on July 9, 1996. During the hearing, the plaintiffs argued that the LCBOR should be held in default for its failure to comply with Form "PTAB-6." Pursuant to PTAB rules, when a taxpayer files a petition, the local board of review is obligated to file a Form PTAB-6. At the time in question, that form contained the following provision:

"NOTE: If the appellant has submitted assessments of comparable properties as a method of establishing an inequity in the assessment process, the county board of review must submit justification for the variation in the assessments between the subject and comparable properties submitted by the appellant. Evidence may accompany this form or be presented in rebuttal evidence."

Form PTAB-6 further provided that the local board of review's failure to "properly and timely file [the] form may result in the default of the county board of review."

Although the LCBOR filed a timely Form PTAB-6 in response to each of the 51 petitions, the plaintiffs argued that the LCBOR had failed to specifically explain the reason for the variations in assessments between the subject properties and comparable properties submitted by the plaintiffs in their petitions to the PTAB. Rather, the LCBOR submitted other comparable buildings in the area to support its building assessments for the subject properties. The plaintiffs argued that a default was required because the LCBOR had failed to provide "justification" for the variation in assessments as required by Form PTAB-6. The PTAB hearing officer did not make a ruling on this request and instead proceeded with the evidentiary hearing.

During the hearing, the plaintiffs and the LCBOR introduced evidence of the assessments of various comparable properties (comparables) in the area. The PTAB determined that only two of the plaintiffs' suggested comparables, Pebbleshire I and II, were truly comparable to the subject properties. Pebbleshire I and II were apartment complexes located across the street from the subject properties

and competed with the subject properties for the same prospective tenants. The Pebbleshire buildings were similar in construction and size to the subject properties. For the 1994 tax year, Pebbleshire I and II were assessed at a rate of $7.48 and $8.73 per square foot, respectively. The plaintiffs' buildings, on the other hand, were assessed between $14.81 and $18 per square foot that year.

The PTAB also determined that only four of the LCBOR's suggested comparables were truly comparable to the subject properties. Three of these comparables were located at 709, 715, and 790 Court of Spruce. As noted above, the owners of these buildings did not join in the appeal with the other owners of the remaining 21 buildings on Court of Birch and Court of Spruce. Since these three buildings were part of the same complex as the other units, they had also been assessed for the contested amount, $18 per square foot. The fourth comparable was one of the buildings in the Lakewood Villas apartment complex. The record does not indicate the precise assessed valuation of this particular building.

The Hawthorne School District did not submit any written evidence at the PTAB hearing and instead adopted the evidence submitted by the LCBOR.

On May 7, 1997, the PTAB issued three written decisions disposing of 45 of the plaintiffs' petitions. On June 17, 1997, the PTAB issued a fourth written decision disposing of the remaining six petitions. The PTAB's findings were essentially the same in each of the four written decisions. The PTAB found that Pebbleshire I and II were comparable to the subject properties and set the low end of the assessment range. The PTAB also found that 709, 715, and 790 Court of Spruce were comparable properties and set the high end of the assessment range. The PTAB therefore determined that the appropriate assessment range was $5,634 to $9,513 for one-bedroom apartment units and $7,244 to $13,670 for two-bedroom units.

Applying these ranges to the subject properties, the PTAB found that the 1994 tax assessments of the 35 buildings located at Court of Spruce, Court of Birch, 805-915 Westmoreland, and 840-950 Westmoreland all fell within the comparable assessment range and that no reduction in the assessment was warranted. In regard to the 16 buildings located at 830-985 Westmoreland, the PTAB found that the $10,382 assessment of the one-bedroom apartments in those buildings was higher than the $5,634 to $9,513 assessment range of the comparable properties. The PTAB determined that the proper assessment for the one-bedroom apartments in these units was $9,513. The PTAB therefore ordered that the assessment of each of these 16 buildings be reduced from $94,389 to $90,908. The PTAB's written decisions did

not specifically address the plaintiffs' request that the LCBOR be held in default for its alleged failure to comply with Form PTAB-6.

On June 2, 1997, the plaintiffs filed a complaint seeking administrative review of the PTAB's three written decisions dated May 7, 1997. On July 9, 1997, the plaintiffs filed an amended complaint, which included the PTAB's fourth written decision dated June 17, 1997.

On March 11, 1998, the trial court held a hearing on the plaintiffs' complaint for administrative review. During the hearing, the plaintiffs argued that the PTAB erred in its uniformity analysis by using the 1994 assessed valuation of three buildings from the plaintiffs' own apartment complex to set the high end of the assessment range. The plaintiffs also argued that the PTAB's written decisions were contrary to PTAB rules and the instructions contained on PTAB appeal forms.

At the close of the hearing, the trial court found that it was inappropriate for the PTAB to use 709, 715, and 790 Court of Spruce to set the high end of the assessment range. The trial court vacated the PTAB's four written decisions and ordered the PTAB to redetermine the appropriate assessment of the subject properties without reliance on the properties located at 709, 715, and 790 Court of Spruce.

On May 20, 1998, the PTAB filed four new written decisions in the trial court. The PTAB found that the only truly comparable properties were Pebbleshire I and II. The PTAB rejected all of the LCBOR's suggested comparables. In compliance with the trial court's order, the PTAB refused to consider 709, 715, and 790 Court of Spruce because these properties "were located within the subject properties' complex" and "because they have the same assessments as all of the subject properties." The PTAB reduced the assessment on all 51 buildings to the following levels:

| | |
|---|---|
| Courts of Birch and Spruce | $48,000 per building |
| 830-985 Westmoreland | $64,000 per building |
| 805-915 Westmoreland | $64,000 per building |
| 840-950 Westmoreland | $64,000 per building. |

On June 24, 1998, the trial court affirmed the PTAB's decisions on remand. In its written order, the trial court specifically denied the plaintiffs' request to default the LCBOR for its alleged failure to comply with Form PTAB-6.

The LCBOR and the Hawthorne School District subsequently filed timely notices of appeals from the trial court's orders vacating the PTAB's original written decisions and affirming the PTAB's decisions on remand. The plaintiffs have filed a timely notice of cross-appeal, seeking review of that portion of the trial court's order denying its

request for a default judgment against the LCBOR. On September 15, 1998, this court consolidated these appeals for purposes of hearing and disposition.

## DISCUSSION

### I

On appeal, defendants LCBOR and the Hawthorne School District raise two arguments. First, the defendants contend that the trial court was without jurisdiction to hear the plaintiffs' complaint for administrative review because the plaintiffs sought a change in assessment in excess of $300,000. The defendants argue that, pursuant to section 16—195 of the Code (35 ILCS 200/16—195 (West 1996)), the plaintiffs were required to file their complaint for administrative review directly with this court. Second, assuming that the trial court had jurisdiction to hear this matter, the defendants argue that the trial court erred when it vacated the PTAB's decisions and ordered the PTAB to redetermine the assessments of the subject properties without considering the properties located at 709, 715, and 790 Court of Spruce as comparables. We will consider each argument in turn.

### A

■ The defendants first argue that the trial court did not have subject matter jurisdiction to hear the plaintiffs' complaint for administrative review. Section 16—195 of the Code provides, in relevant part:

"Final administrative decisions of the [PTAB] are subject to review under the provisions of the Administrative Review Law, except that in every case where a change in assessed valuation of $300,000 or more was sought, that review shall be afforded directly in the Appellate Court for the district in which the property involved in the Board's decision is situated, and not in the circuit court." 35 ILCS 200/16—195 (West 1996)).

For purposes of the statute, the "change in assessed valuation" is determined by taking the difference between the final decision of the board of review and the proposed assessment requested by the taxpayer at the time his petition for review is filed with the PTAB. *County of Coles v. Property Tax Appeal Board*, 275 Ill. App. 3d 945, 948-49 (1995). Subsequent actions of the parties do not alter the amount of the change sought. *County of Coles*, 275 Ill. App. 3d at 949.

In support of their position on appeal, the defendants note that the PTAB consolidated the plaintiffs' 51 separate petitions into four "separate groups of decisions." The total change in assessment sought by the plaintiffs in each of these four separate groups of cases exceeded $300,000. Specifically, the plaintiffs sought a total assessment reduc-

tion in the following amounts: (1) $838,740 for the 21 buildings in the Courts of Birch and Spruce; (2) $806,512 for the 16 buildings at 830-985 Westmoreland; (3) $312,210 for the 6 buildings at 805-915 Westmoreland; and (4) $415,136 for the 8 buildings at 840-950 Westmoreland. The defendants contend that, once consolidated, the 51 separate petitions "lost their independent identity and merged into four separate decisions." As the total reduction sought exceeded $300,000 in each of these decisions, the defendants conclude that the plaintiffs were required to seek administrative review in this court.

In response to this jurisdictional argument, the plaintiffs contend that the PTAB's consolidation of the 51 petitions did not cause them to lose their separate identities. The plaintiffs note that they filed 51 individual petitions involving 51 parcels with individual PINs. Since the "change in assessed valuation" sought in each of the 51 petitions ranged from only $39,940 to $52,035, the plaintiffs argue that the trial court had jurisdiction to hear the plaintiffs' complaint under section 16—195 of the Code.

■ We agree with the plaintiffs that the 51 petitions did not lose their separate identities merely because they were consolidated by the PTAB and disposed of with four written orders. Although the petitions may have involved similar principles of law and required similar factual determinations, each petition nonetheless represented a separate and independent piece of property with its own PIN. In each case, the county assessor and the LCBOR were required to make a separate determination as to the appropriate valuation to be assessed to each piece of property. The county assessor kept separate assessment records for each piece of property according to its PIN. On review, although the PTAB issued only four written decisions, it nonetheless made specific findings as to each of the 51 individual parcels of property.

The separate nature of these cases is further illustrated by the fact that the 51 properties were not owned by the same individual. Indeed, the plaintiffs' complaint identifies 38 individuals and entities that owned the various apartment buildings here at issue. The defendants fail to explain how the judicial mechanism of consolidation somehow transmutes the 51 petitions brought by these various owners into four separate taxpayer petitions. Rather, we believe that each of the 51 petitions brought herein represented a distinct and independent case brought by an individual taxpayer relating to the specific parcel of property owned by him or her. As none of the taxpayers sought a change in assessment on any individual property in excess of $300,000, the trial court was the proper forum to seek administrative review. 35 ILCS 200/16—195 (West 1996). Indeed, had the plaintiffs

initially filed their complaint for administrative review with this court, we would have been compelled to dismiss the action for lack of jurisdiction.

In so holding, we note that the trial court was not deprived of jurisdiction simply because the plaintiffs filed only one complaint for administrative review. Although the parties dispute whether the plaintiffs were obligated to file 51 separate complaints for administrative review (one for each property), we note that such a question relates to pleading and does not affect the trial court's jurisdiction over the subject matter. A defective pleading will not destroy jurisdiction where the trial court has jurisdiction over the subject matter and has acquired jurisdiction over the parties. *People ex rel. Scott v. Janson*, 57 Ill. 2d 451, 459-60 (1974); *Irving v. Rodriquez*, 27 Ill. App. 2d 75, 79 (1960). For the reasons already discussed above, we believe that the trial court herein had subject matter jurisdiction over the 51 separate petitions.

Moreover, we note that the defendants never objected to the form of the pleadings below. All defects in pleadings, either in form or substance, not objected to in the trial court are waived. 735 ILCS 5/2—612(c) (West 1996). Therefore, the defendants' failure to object below to the form and substance of the plaintiffs' complaint for administrative review results in that issue being waived on appeal.

Finally, we note that the two authorities relied upon by the defendants in support of their jurisdictional argument are inapposite. See *Community High School District No. 155 v. Property Tax Appeal Board*, 288 Ill. App. 3d 386, 388-89 (1997); *County of Coles*, 275 Ill. App. 3d at 948-49. Neither of these cases considers the question of whether separate petitions concerning individual parcels of property with separate PINs can be combined for purposes of determining whether the $300,000 jurisdictional threshold has been satisfied under section 16—195 of the Code. Rather, these cases concern at what point in time during the proceedings the "change in assessed valuation" calculation is determined. *Community High School District No. 155*, 288 Ill. App. 3d at 388-89; *County of Coles*, 275 Ill. App. 3d at 948-49. We therefore do not find these authorities useful in our analysis. Rather, for the reasons stated above, we conclude the trial court herein had subject matter jurisdiction to consider the plaintiffs' complaint for administrative review.

### B

The defendants' second contention on appeal is that the trial court erred when it vacated the PTAB's original decisions and ordered the PTAB to redetermine the assessments without using the buildings lo-

cated at 709, 715, and 790 Court of Spruce as comparables. The defendants argue that the determination of what properties could be used as comparables was a factual determination to be made by the PTAB. The defendants contend that, on administrative review, the trial court's sole function was to determine whether the PTAB's findings were against the manifest weight of the evidence.

■ Our review of this case is governed by the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1996)). As in other administrative review actions, the PTAB's findings and conclusions on questions of fact are deemed *prima facie* true and correct. *Kankakee County Board of Review v. Property Tax Appeal Board*, 131 Ill. 2d 1, 14 (1989). This court will not disturb the PTAB's findings where there exists simply a difference of opinion regarding the actual value of property. *Kankakee County*, 131 Ill. 2d at 14. However, a reviewing court is not bound by an agency's determination on matters of law. *Lake County Board of Review v. Property Tax Appeal Board*, 192 Ill. App. 3d 605, 613 (1989).

The parties dispute whether the PTAB's decision to use 709, 715, and 790 Court of Spruce as comparable properties was a factual determination or involved a question of law. In support of their contention that this was a factual determination, the defendants rely on *Du Page County Board of Review v. Property Tax Appeal Board*, 284 Ill. App. 3d 649 (1996). In that case, the Du Page County Board of Review argued that the PTAB had erred as a matter of law when it chose to rely on four comparable properties from the taxpayer's own subdivision. *Du Page County Board of Review*, 284 Ill. App. 3d at 653. In rejecting this argument, this court explained:

"The question whether the four comparable sales did or did not establish that the subject property was not uniformly assessed was a factual issue for the PTAB to resolve. Although the facts were undisputed in the sense that the parties agreed about the physical dimensions and characteristics of the subject property and the comparables, both parties presented expert testimony to the effect that the comparables supported their respective valuations. This required the PTAB to assess the credibility of the witnesses and the weight of the evidence." *Du Page County Board of Review*, 284 Ill. App. 3d at 653-54.

After reviewing the four comparable properties relied upon by the PTAB, we held that the PTAB's decision was neither against the manifest weight of the evidence nor improper as a matter of law. *Du Page County Board of Review*, 284 Ill. App. 3d at 655-56.

We believe that the question in the instant appeal is different from that presented in *Du Page County Board of Review*. In *Du Page County*

*Board of Review*, the PTAB utilized comparables that were assessed separately from and independently of the property in dispute. Here, however, the PTAB used the very assessment being appealed from to set the high end of the range. It is for this very reason that the subject properties fell within the range of comparable properties established by the PTAB. Therefore, the PTAB essentially held that the assessments imposed on the subject properties were self-validating.

■ The Illinois Constitution requires uniformity of taxation (Ill. Const. 1970, art. IX, § 4(a)) and prohibits taxing officials from valuing one kind of property within a taxing district at a certain proportion of its true value while valuing the same kind of property in the same district at a substantially lesser or greater proportion of its true value (*Kankakee County*, 131 Ill. 2d at 20). Although we acknowledge that the PTAB is in the best position to determine what properties are truly comparable, we nonetheless believe that the PTAB errs as a matter of law when it selects as a comparable a parcel of property which has also received the same contested assessment. Conducting uniformity analysis in such a manner will lead to absurd results and will render the assessment appeal process meaningless.

■ As noted above, in instances where the PTAB has erred as a matter of law, the reviewing courts are not required to give deference to the PTAB and should actively intervene. See *Kankakee County*, 131 Ill. 2d at 23 (appellate court properly reversed PTAB decision where the PTAB erred as a matter of law in using a valuation method that ignored the property's receipt of subsidy). For the reasons detailed above, we agree with the trial court that the PTAB erred as a matter of law when it considered as comparables the properties located at 709, 715, and 790 Court of Spruce. We therefore affirm the trial court's March 11, 1998, order vacating the PTAB's original decisions on the 51 petitions and ordering the PTAB to redetermine the appropriate assessments of the properties without considering 709, 715, and 790 Court of Spruce.

Although the defendants have also filed a notice of appeal from the trial court's June 24, 1998, order affirming the PTAB's subsequent decisions on remand, they make no argument in their appellate briefs that this finding was against the manifest weight of the evidence. Supreme Court Rule 341(e)(7) specifically provides that points not argued in the appellate brief are waived. 177 Ill. 2d R. 341(e)(7). We will therefore not consider whether the PTAB's subsequent decisions on remand were against the manifest weight of the evidence.

II

■ In its cross-appeal, the plaintiffs argue that the PTAB erred in

failing to enter a default judgment against the LCBOR for its failure to comply with Form PTAB-6. The plaintiffs argue that the LCBOR failed to comply with that form because it did not provide a separate written explanation of its justification for the variation in assessments between the subject properties and the comparables submitted by the plaintiffs. The plaintiffs conclude that, pursuant to PTAB Rule 1910.69(a) (86 Ill. Adm. Code § 1910.69(a) (1991)), the PTAB was required to default the LCBOR for its failure to comply with the requirements of the form.

As the plaintiffs correctly note, the PTAB has adopted official rules and forms relating to the required procedure to challenge an assessment before the PTAB. At the time in question, PTAB Rule 1910.40(a) provided, in relevant part:

> "Upon receipt of the contesting party's petition and upon assignment of a docket number to the petition, the Clerk of the [PTAB] shall secure an explanation of the Board of Review's action on the local appeal of the property (Form PTAB-6) ***. *** Form PTAB-6 and all written and documentary evidence supporting the Board of Review's position must be submitted to the [PTAB] within 30 days after the date and/or postmark of the notice of the filing of an appeal ***." 86 Ill. Adm. Code § 1910.40(a) (1991).

As noted above, at the time in question, Form PTAB-6 specifically required the county board of review to "submit justification for the variation in the assessments between the subject and comparable properties submitted by the appellant."

Additionally, at the time in question, PTAB Rule 1910.69(a) required the PTAB to default any party that failed to comply with Rule 1910.40. 86 Ill. Adm. Code § 1910.69(a) (1991). PTAB Rule 1910.69(a) provided as follows:

> "Failure of any party to comply fully with all rules and/or specific requests of the [PTAB] as provided in sections *** 1910.40 *** of this Part shall result in the default of that party." 86 Ill. Adm. Code § 1910.69(a) (1991)

In reliance upon these rules, the plaintiffs contend that the LCBOR should have been defaulted for its failure to comply with Form PTAB-6

It is well established that, where an administrative agency adopts rules or regulations under its statutory authority for carrying out its authorized duties, it is bound by those rules and cannot arbitrarily disregard them or apply them in a discriminate manner. *Heavner v. Illinois Racing Board*, 103 Ill. App. 3d 1020, 1025 (1982). "Having once established rules and regulations pursuant to statutory authority, an administrative agency is bound by those rules and regulations and

may not violate them." *Margolin v. Public Mutual Fire Insurance Co.,* 4 Ill. App. 3d 661, 667 (1972).

In the instant case, the LCBOR did timely file a Form PTAB-6 with respect to each of the 51 properties. Although the LCBOR did not provide a written explanation justifying the variation in assessments between the subject properties and the comparables submitted by the plaintiffs, the Board did submit assessments and market data on eight properties that it deemed comparable. Such supporting data included property record cards and real estate transfer declaration sheets for each of these comparables.

We agree with the LCBOR that such submissions were sufficient to constitute "justification" as contemplated by Form PTAB-6. By so doing, the LCBOR advised the plaintiffs of its position that the comparables submitted by it more accurately reflected the value of the subject properties than those submitted by the plaintiffs. In essence, the LCBOR justified the disparity in assessments between the subject properties and the plaintiffs' comparables by submitting its own list of comparable properties and extensive data concerning those properties. In light of these materials, we simply cannot say that LCBOR's submission constituted a violation of PTAB rules. See 86 Ill. Adm. Code § 1910.69(a) (1991).

As the PTAB correctly notes in its appellate brief, an administrative agency's interpretation and application of its rules will be upheld on appeal unless it is clearly erroneous, arbitrary, or unreasonable. *Central Illinois Public Service Co. v. Illinois Commerce Comm'n,* 243 Ill. App. 3d 421, 428 (1993). As there is no evidence that the LCBOR violated any PTAB rules or otherwise failed to substantially comply with Form PTAB-6, we believe that the PTAB was not required to enter a default judgment against the LCBOR. The PTAB was in the best position to determine whether its rules and procedures had been followed. We cannot say that the PTAB's refusal to enter a default judgment against the LCBOR was clearly erroneous, arbitrary, or unreasonable. See *Central Illinois Public Service Co.,* 243 Ill. App. 3d at 428. Accordingly, we conclude that the plaintiffs are not entitled to any relief on their cross-appeal.

## CONCLUSION

For the foregoing reasons, the March 11, 1998, and June 24, 1998, orders of the circuit court of Lake County are affirmed.

Affirmed.

BOWMAN, P.J., and GALASSO, J., concur.