No. 2--05--1235                                                    filed: 12-21-06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| OLIVER-HOFFMANN CORPORATION, | ) | Petition for Review from the Illinois |
| | ) | Property Tax Appeal Board. |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | No. 03-01507.001 |
| | ) | |
| THE PROPERTY TAX APPEAL BOARD | ) | |
| and THE KANE COUNTY BOARD OF | ) | |
| REVIEW, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE McLAREN delivered the opinion of the court:

Petitioner, Oliver-Hoffmann Corporation, appeals from the order of respondent Property Tax Appeal Board (PTAB) that affirmed the property valuation order of respondent Kane County Board of Review (BOR). We affirm.

Oliver-Hoffmann developed Tanglewood Hills subdivision in Batavia Township, Kane County. The development included the Tanglewood Hills Club (Club), a recreational facility consisting of a swimming pool, decks, a snack bar, and an "event" room. In tax year 2003, Batavia Township assessed the parcel on which the Club was located at $375,266. Oliver-Hoffmann appealed to the BOR, which found that the assessment was correct. On appeal, the PTAB upheld the BOR, and this appeal followed.

On appeal, Oliver-Hoffmann contends that the Club meets the requirements of section 10--35(a) of the Property Tax Code (Code) (35 ILCS 200/10--35(a) (West 2004)) and should therefore be assessed at $1 per year.

Section 10--35(a) of the Code provides:

"Residential property which is part of a development, but which is individually owned and ownership of which includes the right, by easement, covenant, deed or other interest in the property, to the use of any common area for recreational or similar residential purposes shall be assessed at a value which includes the proportional share of the value of that common area or areas.

Property is used as a 'common area or areas' under this Section if it is a lot, parcel, or area, the beneficial use and enjoyment of which is reserved in whole as an appurtenance to the separately owned lots, parcels, or areas within the planned development.

The common area or areas which are used for recreational or similar residential purposes and which are assessed to a separate owner and are located on separately identified parcels, shall be listed for assessment at $1 per year." 35 ILCS 200/10--35(a) (West 2004).

Our review of this case is governed by the Administrative Review Law (735 ILCS 5/3--101 et seq. (West 2004)). Pace Realty Group, Inc. v. Property Tax Appeal Board, 306 Ill. App. 3d 718, 727 (1999). The PTAB's findings and conclusions on questions of fact are deemed prima facie true and correct; however, this court is not bound by the agency's determinations on matters of law. Pace Realty Group, Inc., 306 Ill. App. 3d at 727.

The PTAB found that the Club facilities were located on lot 4 of Tanglewood Hills Unit 2. Lot 1 was improved with a school that had been operating for two years. Lots 2, 3, and 5 were open

space managed by the Tanglewood Hills Homeowners Association (Association). Lot 6 was farmed. The subject parcel was made up of these six lots and totaled 60.23 acres. None of the individual lots was assigned a parcel number.

On March 1, 2000, Oliver-Hoffmann recorded with the Kane County recorder's office a "Declaration of Covenants and Restrictions for Tanglewood Hills" (Declaration). The Declaration provided that Oliver-Hoffmann had "submitted the Tanglewood Hills Club to the City of Batavia for approval, but the final approvals have not been obtained as of the date of the recording" of the Declaration. Oliver-Hoffmann was to incorporate the Association, which would "be responsible for the operation, maintenance, and repair of the property entrusted" to the association, including the swimming pool, buildings, and grounds of the Club. Pursuant to the Declaration, every lot owner in Tanglewood Hills is a "resident member" of the Club, although the total number of resident members could not exceed 500. Annual memberships in the Club could be purchased by nonresidents of Tanglewood Hills. These annual memberships provided "all the rights and privileges afforded by the Tanglewood Hills Club" except for voting rights and ownership interest. Such memberships terminated on May 31 of each year regardless of when they began. The total number of resident and annual memberships combined was not to exceed 550.

At the hearing before the PTAB, Oliver-Hoffmann's counsel stated that annual memberships currently sold for $475 and lasted for the summer months. The memberships allowed the use of the pool and the event room for occasions such as parties. Counsel estimated that there were approximately 100 annual members. The revenue generated by the sale of the memberships, and by food sales from the snack bar, was used for maintenance and to defray the costs of the resident owners. Swimming lessons were available for a fee to both resident and annual members. In an

affidavit, Robert Schulz, vice president and treasurer of Oliver-Hoffmann, stated that, as of December 8, 2003, there were approximately 125 lot owners other than Oliver-Hoffmann in Tanglewood Hills.

The BOR submitted evidence that the subject parcel of land had not been deeded to the Association and remained under the ownership of Oliver-Hoffmann, which also was the developer and the owner/operator of the Club. The Club's land did not have its own parcel number, as it remained one lot of six on a 60.23-acre parcel. The BOR noted that the building permit that had been obtained for the clubhouse was for a commercial building, which is not a residential use.

The PTAB found that the Club and its associated facilities were "not reserved in whole for individual property owners within the Tanglewood Hills residential development" and were therefore not "common area[s] reserved in whole for members of the association" because the Club was "open to the public by membership without being a property owner" within the community. The PTAB also found that the revenue generated by the sale of memberships, swimming lessons, and snacks was "revenue [generated by] commercial enterprises that are not reserved in whole for a recreational or residential use." Therefore, the PTAB concluded that the property was not entitled to the $1 common-area assessment of section 10--35(a).

Oliver-Hoffmann first raises the general proposition that statutes imposing taxes are to be strictly construed against the government and in favor of the taxpayer. See Gem Electronics of Monmouth, Inc. v. Department of Revenue, 183 Ill. 2d 470, 475 (1998). While this is true, it is also inapplicable in this case. This is not a case involving the assessed value of a parcel or whether a parcel is exempt from taxation. The question is whether Oliver-Hoffmann should pay the tax on the parcel or whether the value of the parcel should be subsumed in the value of the separately taxed residential units. This is a question of how the property is to be assessed and who is to pay the tax.

We cannot strictly construe the statute in favor of Oliver-Hoffmann and against the government, because this case does not solely pit the interests of those parties against each other. Oliver-Hoffmann's interests are pitted against those of the homeowners of Tanglewood Hills as well.

Section 10--35(a) provides that a proportional share of the value of common areas shall be assessed to individually owned residential property when that ownership includes "the right, by easement, covenant, deed, or other interest in property" to the use of the common area for recreational or similar residential purposes. 35 ILCS 200/10--35(a) (West 2004). Oliver-Hoffmann argues that the Declaration that it recorded in March 2000 provided a covenant for use of the common areas by the lot owners and, thus, satisfies the requirements of section 10--35(a). However, the Declaration does not grant ownership of the common area to the property owners or the Association. It is undisputed that, as of the date of the assessment, Oliver-Hoffmann owned the entire parcel, including the lot containing the pool and clubhouse. Without the transfer of some real property interest in the land upon which the Club was situated, the Tanglewood Hills homeowners have, at best, been allowed to swim in the Oliver-Hoffmann swimming pool and party in the Oliver-Hoffmann "event room." In exchange, Oliver-Hoffmann asks that the homeowners spread the tax assessment for Oliver-Hoffmann's property amongst their lots and, in essence, pay the property tax on the land. This is not the intent of section 10--35(a).

Furthermore, property qualifies as a "common area" under section 10--35(a) "if it is a lot, parcel, or area, the beneficial use and enjoyment of which is <u>reserved in whole as an appurtenance to the separately owned lots</u>, parcels, or areas within the planned development." (Emphasis added.) 35 ILCS 200/10--35 (West 2004). In this case, the beneficial use and enjoyment of the pool and its attached facilities were not reserved in whole as an appurtenance to the separately owned lots of

Tanglewood Hills because annual memberships were sold to nonresidents. The evidence shows that there were approximately 100 annual members who had the same right as the homeowners to use the Club's facilities. The Declaration even reserved at least 50 memberships for nonowners, as resident memberships were capped at 500 of the 550 total memberships allowed. Given that there were approximately 125 homeowners at that time, 44% of the members were nonhomeowners. These facts support the PTAB's finding that use and enjoyment of the Club were not reserved in whole for lot owners in Tanglewood Hills.

Oliver-Hoffmann argues that section 10--35(a) does not require that a common area be used exclusively by the lot owners and that the phrase "in whole" should be applied "to the use of the property not the membership thereof. The entire Club is reserved to the Lot Owners; there is no portion that is reserved to another entity or user." This interpretation is strained and self-contradictory. The "entire Club" is not reserved to the lot owners; it is reserved to members, almost half of which were not lot owners at that time, and all members had the same right to use the Club.

Equally without merit is Oliver-Hoffmann's argument that reservation of the use of the common area for lot owners would prohibit lot owners from inviting nonowner guests to use the facilities. This is a non sequiter. The Club is not in any way reserved for the use of nonowner guests as it is in part reserved for nonowner members; guests have no right of use at all if they are not invited by a member.

Oliver-Hoffmann seeks to retain its cake and have the lot owners pay for it, keeping title to its property yet attempting to pass along the assessment on that property to the lot owners. The PTAB correctly determined that section 10--35(a) does not permit such an outcome. Therefore, we affirm the ruling of the PTAB.

Affirmed.

GROMETER, P.J., and CALLUM, J., concur.