Heriberto MORALES, Sadot Fabian, Miguel Sanchez, Abraham Ortiz, Emiliano Celaya, Felipe Morales, Arturo Casteneda, Fernando Ortiz, Julio Carbajal, H & E Sod Nursery, Inc., Sodgrowers Association of Mid–America, and American Sod Producers Association, Plaintiffs,

v.

Richard E. LYNG, Secretary of Agriculture, Edwin Meese III, Attorney General of the United States of America; Alan C. Nelson, Commissioner, Immigration and Naturalization Service, United States Department of Justice, and George P. Schultz, Secretary of State, Defendants.

No. 87 C 20522.

United States District Court,
N.D. Illinois, W.D.

Sept. 26, 1988.

Vincent H. Beckman, Jean Agathen, Illinois Migrant Legal Assistance Project, Jeffrey J. Baker, John J. Gasparovic, Thomas F. Gardner, Jones, Day, Reavis & Pogue, Manuel Sanchez, Kate Collins, Sanchez & Daniels, Chicago, Ill., for plaintiffs.

James G. Hoofnagle, Asst. U.S. Atty., Chicago, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

This action comes before the court on the defendants' objections to the Magistrate's report and recommendation that the court enter judgment in favor of the plaintiffs as to Count II of their complaint. For the reasons set forth below, the court adopts the Magistrate's recommendation with modification.

## DISCUSSION

The defendants presently have a variety of objections to the Magistrate's recommendations. In the interest of efficiency and to avoid duplication, the court will not here recite the history of the SAW program and the instant case, but defers to the Magisrate's "Nature of the Case" section in his Report and Recommendation. In short, the instant case involves various sod workers, growers and sod grower's associations challenging the Secretary's exclusion of the commodity sod from the "Special Agricultural Worker's" ("SAW") program. The plaintiffs contend that the Secretary acted arbitrarily and capriciously when he excluded sod from the definition of "other perishable commodities"—a critical definition for inclusion in the SAW program. In addition, the plaintiffs assert that the defendants' violated § 553 of the A.P.A., 5 U.S.C. § 553.

In sum, the Magistrate found that the Secretary of Agriculture ("Secretary") acted arbitrarily and capriciously by excluding sod from the definition of "other perishable commodities." Secondly, the Magistrate found that the Secretary's statement of basis and purpose violated Section § 553 of the Administrative Procedure Act ("A.P.A."). Finally, the Magistrate fashioned relief consistent with his findings.

■ The court will address the substance of the defendants' various objections.

I. Exclusion of Sod from "Other Perishable Products."

*A. Seasonal*

The defendants argue "[c]ontrary to the Magistrate's conclusion, sod's characteristic of taking 'multi-years to reach maturity' is highly relevant because it indicates that planting, cultural practices, cultivating, growing, and harvesting of sod are not performed exclusively at certain times of the year." The court finds this objection unpersuasive. First, the fact that a commodities' growth cycle is multi-annual does not directly lead to the conclusion that certain activities occur year round. Second, even if certain activities do occur year round like "growing", there is no reason to believe that certain employment practices such as harvesting and planting occur continuously and not during certain times of year requiring extra help. Accordingly, the court adopts the Magistrate's recommendation.

*B. Critical and Unpredictable Labor Demands*

The defendants contend that the Secretary reasonably determined that sod is not subject to "critical and unpredictable" labor demand. The Secretary also asserts that the Magistrate concentrated unduly on the volume of the comments and not their contents. The defendants also argue that the comments relied upon by the Secretary

were factual in nature as opposed to the pro forma conclusory statements found in a majority of the comments. Also, the defendants find fault in the comments that include "consumer demand" as a factor in the unpredictability of labor demand. Finally, the defendants reason that the comments relied upon by the Secretary were against the interest of the commentators and thus more credible than the other comments.

In finding that the Secretary acting arbitrarily and capriciously in excluding sod, the Magistrate found that the Secretary had failed to consider important aspects of the administrative record and hence the issue itself. See *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

■ The key to determining if labor demand is "critical and unpredictable" is simply understanding that if a farmer cannot predict the initiation of field work with any certainty 60 days in advance, then labor demand is unpredictable. The Secretary found that labor demand with regard to sod was not unpredictable and based this determination, according to his basis of purpose statement, entirely on one paragraph found in approximately eleven comments. The court does not challenge the Secretary's prerogative to base his determination on even one comment if that comment sufficiently persuades the Secretary as to the logic of its content. The court, however, is concerned that the Secretary dismissed the other comments without any good reason. Again, the court does not begrudge the Secretary his right to summarily dismiss frivolous and repetitive comments. However, the court finds that such is not the case here.

To begin, the defendants make much of the difference between the comments relied on by the Secretary and those rejected. The defendants state that the accepted comments are factually based on past experience and admissions against interest and that the other comments are endless clones of conclusory statements. After reviewing the comments, the difference between the comments rejected and those accepted is not so great. The eleven comments accepted are in the same pattern as many of the rejected comments. Additionally, the defendants' vaunted factual statements are merely two sentences long, while other comments describing the unpredictability of labor demands are at least as detailed. *Compare* Comment No. 26 *with* No. 36. Is the comment: "The sod business uses seasonal workers to mow the product during certain times of the year. These times are often related to weather conditions which cause demand for sod to fluctuate and that makes sod difficult to predict the amount of labor needed from time to time." any less factual than "Based on past experience, we can forecast our labor requirements both in terms of dates and number of workers."? The defendants' characterization of one comment as factual and the other as conclusory is not enough to permit one set of comments to be summarily dismissed without mention.

■ The court also takes issue with the defendants objection to the Magistrate recognizing consumer demand as a factor in the unpredictability of sod's labor demand. "Consumer demand" was mentioned in the Magistrate's comments asserting the "critical and unpredictable" nature of sod's labor demand. The defendant pledges that the critical and unpredictable nature of a commodities' labor demand only involves the natural effect of the growth cycle on the commodity and not consumer demand. The defendant cites Senator Wilson's statement that provides: "When we say perishable crops ... we are talking about those that must be harvested immediately when ripe or the crop risks being lost." Statement of Senator Wilson, Cong.Rec. S11606 (September 17, 1985). The definition of "critical and unpredictable", however, is void of a requirement for "perishability" *per se.* Indeed the entire definition of "other perishable commodities" does not include a per se "perishability" requirement. See 52 Fed.Reg. 20376 § 1d.3, 7.

Finally, the court finds it curious that defendants term the eleven "accepted" comments as admissions against interest.

Informal rulemaking is not an adversary proceeding and there is no accused. Further, if indeed the Secretary perceived that the commentators were taking an established position to support their own interests, is it not likely then that the "accepted" eleven comments are consistent with the other comments instead of inopposite to them. In short, all the comments could be reconciled in a plausible fashion and interpreted to mean that: general seasonal demands of extra laborers are predictable, but often within seasonable parameters, the demand for extra field workers is unpredictable. Yet, instead of exploring this reasonable interpretation, the defendants seized upon them as an "admission" of predictability. As importantly, the admission rationale was not brought up at the time of the decision and as such is a post hoc rationalization.

Based on the foregoing, the comments rejected by the Secretary are not simply frivolous and repetitive; rather they represent important aspects of the administrative record and hence the issue at hand. The Secretary cannot summarily dismiss them as conclusory and repetitive; by doing so, the Secretary acted arbitrarily and capriciously. Accordingly, the court adopts the Magistrate's recommendation.

### C. Section 553 of the APA.

■ With regard to the Magistrate's Recommendation on the § 553 violation, the defendants' basic objection is that the high standards set out by the Magistrate are too burdensome to meet and not required by Section 553. The court finds that the standards set out by the Magistrate are not burdensome or beyond the requirements of the A.P.A. The Magistrate is not asking for an "exhaustive discussion of the facts and opinion raised in the comments." Rather, the Magistrate simply requires the Secretary to give some indication why a majority of the comments were picked over. *United States v. Nova Scotia Food Products,* 568 F.2d 240, 253 (2nd Cir.1977), *quoting Automotive Parts & Accessories Ass'n. v. Boyd,* 407 F.2d 330, 338 (D.C.Cir. 1968). In his statement of basis and purpose, the Secretary mentions that all the comments requested sod's inclusion in the definition of "other perishable commodities" but does not mention in any manner why all the comments promoting the predictability of labor demand were dismissed. As noted above, these comments are not considered merely repetitive and frivolous and should not be dismissed without mention. Accordingly, the court adopts the Magistrate's recommendation.

### II. Relief.

■ The defendants object to the relief proposed by the Magistrate as prohibiting the Immigration and Naturalization Service ("INS") from searching the "skeletal" applications, inquiring further to prevent fraudulent claims of employment, or to otherwise follow its regulations regarding the issuance of employment authorization to SAW applicants found at 8 C.F.R. § 210.4(b)(2). Further, under the Magistrate's proposed order it appears that INS must issue the I–688A work authorization to anyone claiming field work in sod without being allowed to conduct the preliminary interview described in 8 C.F.R. § 210.4(b)(2). The defendants further contend that permitting the INS to follow its normal interview procedure will not prejudice sod workers from applying to the SAW program. Finally, the defendants object to the timetable set up by the Magistrate for the remand of the issues back to the Secretary. As support, the defendants point to a similar modification to relief granted by the court in *Northwest Forest Workers Ass'n v. Lyng,* No. 87–333 (D.C. Cir. August 4, 1988) (order modifying the order granting interim relief).

The *Northwest Forest Worker's* court provides a compromise between requiring sugar cane workers from having to comply with all the normal requirements of a SAW application with the attendant risk of it all being for no avail, and the Secretary's fear that non-sodworker aliens will abuse the privilege of filing "skeletal" applications by fraudulently filing as a qualified sodwork SAW applicant. Thus, the *Northwest Forest* court waived the requirement for an interview if the applicant's name was found

on a list of workers supplied by employers or the applicant supplied reliable documentation.

After reviewing the defendants' objections, the Magistrate's Report and Recommendation, and the relief modification order in *Northwest Forest Worker's Ass'n, supra,* the court finds the defendants' objections well taken with few exceptions.

Accordingly, the court adopts the Magistrate's Recommendations with the following modifications as to the relief recommended:

(1) If an applicant supplies the INS with reliable documentation, which may, however, fall short of the complete documentation required of SAW workers, the INS, in its discretion, may issue work authorization and not require the applicant to appear for an interview.

(2) If the INS does not exercise its discretion to rely on reliable documentation, the INS may attempt to verify the applicant's claimed employment. The INS shall schedule an interview with the applicant to take place within 31 days of the filing of the application. The INS also shall issue to the applicant a temporary work authorization (I-689) covering the period between the filing of the "skeletal" application and the scheduled interview. During the period preceding the interview, the INS will attempt to verify the employment by contacting the employer. If, during this period preceding the interview, the employer verifies that the applicant was an employee for the appropriate period, the INS cannot contact the employer, or the employer fails to respond to the inquiries of the INS, the applicant will be issued the I-688A work authorization, without an interview, upon the applicant's return to the Legalization Office.

If, however, the employer states that the employee did not work for the employer or did not work for the requisite number of days required under the SAW program, the applicant will be interviewed when the individual returns to the Legalization Office. At that time, the INS officer conducting the interview will afford the applicant an opportunity to rebut the employer's disavowal of the applicant's claimed employment. Following this interview, if the applicant's claim still does not appear credible, the I-688A work authorization would not be issued.

(3) If, at the time an applicant files a skeletal application, the applicant already has previous work authorization incident to the H-2A or other nonimmigrant program, the applicant shall continue to work under the first work authorization. The INS shall accept the skeletal application for filing but shall not issue the applicant the general I-688A work authorization until after the expiration of the previous work authorization. If, however, the employment pursuant to which an applicant received H-2A status terminates prior to the expiration of the H-2A work authorization, for reasons other than the applicant's voluntary termination of employment, the I-688A work authorization shall be issued. This order does not permit the issuance of I-688A work authorization if an H-2A worker voluntarily terminates his H-2A employment.