JAMES LaBELLE, Plaintiff-Appellant, v. STATE EMPLOYEES RETIRE-
MENT SYSTEM OF ILLINOIS, Defendant-Appellee.

Second District   No. 2—93—0535

Opinion filed July 29, 1994.

Bernard Wysocki, of Bernard Wysocki & Associates, P.C., of Waukegan,
for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, So-
licitor General, and Robert G. Toews, Assistant Attorney General, of counsel),
for appellee.

JUSTICE BOWMAN delivered the opinion of the court:
Plaintiff, James LaBelle, appeals from the order of the circuit
court of Lake County which affirmed the finding of defendant, the
State Employees Retirement System of Illinois (System), that plaintiff

was not eligible for nonoccupational disability benefits due to his "gainful employment" as a member of the Lake County Board (County Board). The issue on appeal is whether petitioner, who was an elected member of the County Board during the period of his disability, was "gainfully employed" within the meaning of section 14—124 of the Pension Code (40 ILCS 5/14—124 (West 1992)) and the regulations interpreting section 14—124. We affirm in part, reverse in part, and remand for further proceedings.

The facts are essentially undisputed. Plaintiff was employed as a general manager with the Department of Conservation (Department). In March 1988, plaintiff was diagnosed as having malignant lymphoma, a form of cancer. In November 1990, plaintiff underwent a bone marrow transplant and remained in the hospital until December 24, 1990. On December 27, 1990, he took a leave of absence from the Department.

On January 16, 1991, plaintiff submitted to the System an application for nonoccupational disability benefits. On February 7, 1991, the System notified plaintiff by letter that it had approved plaintiff's claim for benefits. The System awarded plaintiff $1,625.81 for the period commencing on January 14, 1991, and ending on January 31, 1991. Thereafter, plaintiff would receive a monthly benefit of $2,800. Plaintiff received this monthly benefit until he returned to work on July 7, 1991.

On September 19, 1991, the System discovered that plaintiff was an elected member of the County Board. Plaintiff was sworn in as a County Board member on December 1, 1980, and has served in that capacity continuously. He was reelected to this post in 1992, and his current term expires in 1996. In a letter dated September 24, 1991, the System informed plaintiff that, because of his employment as a County Board member, he was not eligible to receive disability benefits. The System demanded that plaintiff reimburse it for the $16,258.07 that it mistakenly paid him. The letter also informed plaintiff that the System's executive committee would review this decision at their next meeting.

At the hearing before the executive committee, plaintiff stated that he did not attend any County Board meetings until he attended the March 1991 meeting. Thereafter, he attended one meeting per week, staying at each meeting for two or three hours. Although he was unable to attend the County Board meetings from the onset of his disability until March 1991, during this period, he received his full regular salary of $1,692.30 per month. On June 11, 1992, the executive committee found that plaintiff was gainfully employed within the meaning of the applicable regulations and affirmed the decision

to deny plaintiff's claim for disability benefits. On July 28, 1992, the System's board of trustees ratified the executive committee's decision.

On August 27, 1992, plaintiff filed in the circuit court of Lake County a complaint seeking administrative review of the board of trustees' decision. (See Ill. Rev. Stat. 1991, ch. 110, par. 3—103 (now codified, as amended, at 735 ILCS 5/3—103 (West 1992)).) The court found that plaintiff's " 'service' in his elected position is adequate to satisfy the exchange requirement (compensation for services) prerequisite to a finding that he was gainfully employed during his time of disability" and affirmed the board of trustees' decision. Plaintiff timely appealed.

•1 Section 14—124 of the Pension Code provides for the payment of nonoccupational disability benefits, under certain enumerated circumstances, to certain members of the System. (40 ILCS 5/14—124 (West 1992).) One of the conditions of receiving the benefits is that the member be granted a disability leave of absence from his employment. (40 ILCS 5/14—124 (West 1992).) Once a member begins to receive the benefits, the benefits "shall continue to accrue until the first of the following to occur: *** the date on which the member engages in *gainful employment*." (Emphasis added.) 40 ILCS 5/14—124 (West 1992).

Pursuant to section 14—135.03 of the Pension Code (40 ILCS 5/14—135.03 (West 1992)), the System's board of trustees has promulgated a regulation which defines "gainful employment" as "[a]ny remuneration which exceeds $500.00 in any month." (80 Ill. Adm. Code § 1540.80(e)(2) (1991).) The regulation defines "remuneration" as "any compensation for personal services including fees, wages, salary, commissions, and similar items." 80 Ill. Adm. Code § 1540.80(e)(2)(A)(i) (1991).

Because the board of trustees has promulgated a regulation which further defines the statutory term "gainful employment," this appeal involves a review of an administrative agency's interpretation of its own regulations. Courts reviewing an agency's decision generally accord the agency broad discretion when making decisions based on the statutes that they must enforce and accord great deference to an agency's interpretation of its own regulations. (*People ex rel. Illinois Educational Labor Relations Board v. Oregon Community Unit School District 220* (1992), 233 Ill. App. 3d 582, 586.) This deference stems from a recognition that administrative agencies "can make informed judgments upon the issues, based upon their experience and expertise." (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 153.) Although an agency's interpreta-

tion is not binding on the court, the court will give great weight to an agency's construction and application of its own regulation unless it is clearly erroneous, arbitrary, or unreasonable. *Water Pipe Extension, Bureau of Engineering v. Illinois Local Labor Relations Board* (1993), 252 Ill. App. 3d 932, 936; *Mitee Racers, Inc. v. Carnival-Amusement Safety Board* (1987), 152 Ill. App. 3d 812, 816-17.

●2 Plaintiff advances essentially three arguments in support of his claim that the board of trustees' decision is clearly erroneous. First, he claims that his serving as a county board member cannot be considered "gainful employment" in light of certain provisions of the Counties Code and the Illinois Constitution. The Counties Code states that elected county board members "shall receive such compensation as is fixed by the county board in accordance with the method of compensation selected by the county board." (55 ILCS 5/4—10001 (West 1992).) Section 2—3008 of the Counties Code, which mirrors article VII, section 9(b), of the Illinois Constitution, states that any changes in the "compensation" of county board members "shall not *** take effect during the term for which an incumbent county board member has been elected." 55 ILCS 5/2—3008 (West 1992); see also Ill. Const. 1970, art. VII, § 9(b).

Plaintiff stresses that, by statute, he must receive his compensation as long as he sits on the board and cannot refuse it even if he does not perform his duties as a board member. Therefore, his salary as a board member is in actuality not "compensation for personal services." Plaintiff's argument is without merit primarily because it requires us to look to sources other than the applicable statutory and regulatory provisions to determine the meaning of "gainfully employed." In construing regulations promulgated by an administrative agency, the same rules used to interpret statutes apply. (*Hoffman v. Board of Fire & Police Commissioners* (1988), 175 Ill. App. 3d 219, 224.) One of the primary rules of statutory construction is that the court should first consider the language of the provision at issue, and, where that language is clear, it should be given effect without resorting to other aids for construction. *Graunke v. Elmhurst Chrysler Plymouth Volvo, Inc.* (1993), 247 Ill. App. 3d 1015, 1020.

We decline to consider these provisions of the Counties Code because the language "compensation for personal services" is not ambiguous in any respect. It clearly encompasses those who do work on behalf of another person or entity in exchange for money. Assuming *arguendo* that we could consider these provisions of the Counties Code, we do not perceive any overriding policy implicit in the Counties Code that would prevent the board of trustees from interpreting the regulation at issue to include elected officials such as

plaintiff. Sections 4—10001 and 2—3008 themselves speak of "compensation." We fail to see how the above-mentioned provisions prevent this "compensation" from being considered "compensation for personal services." There is nothing in the language of these provisions that militates against interpreting the regulation in this manner. Therefore, we cannot say that the substance of these provisions renders the board of trustees' interpretation of the regulation arbitrary or unreasonable.

Plaintiff argues next that the nature of elected office is such that any compensation that an elected official receives is not in essence "compensation for personal services." According to plaintiff, an elected official is not receiving compensation in exchange for performing personal services, but instead receives a salary merely by virtue of holding the public office. Plaintiff relies on *Kelly v. Chicago Park District* (1951), 409 Ill. 91, in support of this contention. There, the court stated that if one is lawfully entitled to a public office the right to salary attaches to the office, and that salary may be recovered irrespective of any service rendered and without regard to the fact that the public official may have earned money elsewhere in private employment. (*Kelly*, 409 Ill. at 96.) Unlike with most other types of employment, the public officer's right to compensation does not grow out of a rendition of services. *Kelly*, 409 Ill. at 98.

According to plaintiff, the salary he received during the period in question cannot be considered "compensation for personal services" because that salary must be paid even where, as here, the elected official performs none of the duties of his office. We must determine whether the board of trustees' interpretation of its administrative rule is reasonable in light of *Kelly*'s pronouncement on the nature of a public officer's salary.

The purpose behind the "gainful employment" provisions of section 14—124 of the Pension Code and the System's administrative rule is clear. These provisions were intended to prevent a member of the System from receiving disability benefits while earning money in some work-related endeavor. If the rule were otherwise, a member could receive an unfair windfall by taking a leave of absence from his State-paid position, collecting disability benefits from the System, and securing gainful employment elsewhere.

We do not agree that *Kelly* entirely precludes the board of trustees from interpreting its regulation as covering public officials such as plaintiff. When a public official is performing the duties of his office, any payment he receives during that period is certainly "compensation for personal services." It is not unreasonable or arbitrary for the board of trustees to conclude that a public official

who is well enough to perform the duties of his office should not receive disability benefits. Such a situation falls squarely within the scope of what the regulation was designed to prevent. To hold otherwise would allow people in plaintiff's position to earn an unfair premium that the System and the legislature certainly did not contemplate.

However, we conclude that *Kelly* prevents the board of trustees from applying its regulation in situations where a public official such as plaintiff is not performing the duties of his office. Under *Kelly*, in such a situation the public official is not receiving compensation for personal services. Instead, he receives the compensation solely because he holds the office.

Here, it is undisputed that plaintiff performed none of the duties of his office from the onset of his disability until March 1991. The record reveals that plaintiff attended the March 1991 board meeting and subsequent meetings. To the extent that the board of trustees' interpretation of its regulation prevented plaintiff from receiving disability benefits from January 1991 to March 1991, it is clearly erroneous and arbitrary. Reading *Kelly* and the commissioner's own regulation in conjunction with each other, plaintiff was not gainfully employed during this period because the salary he received during this period was not in exchange for any personal services. The record does not reveal exactly when in March 1991 he resumed performing the duties of his office. Therefore, we must remand the cause so the System can determine "the date on which [plaintiff] engag[ed] in gainful employment." 40 ILCS 5/14—124 (West 1992).

Plaintiff argues that our conclusion that he was not entitled to receive benefits while he was performing the duties of his office will have a chilling effect upon the ability of a State employee to seek or hold elected office. He correctly notes that the right of a citizen to hold public office is a valuable one, and the exercise of this right should not be curtailed except by plain provisions of the law. See *McGuire v. Nogaj* (1986), 146 Ill. App. 3d 280, 282.

However, the board of trustees' interpretation of the regulation does not prevent its members from holding elected office or curtail in any way the right to seek public office. It merely restricts the right of the System's members to receive disability benefits. It seems unlikely that people in plaintiff's position will shy away from the opportunity to seek public office merely because they may not be able to receive benefits should they develop a disability at some uncertain future date. In light of the Pension Code's salutary policy of preventing members of the System from receiving an unfair windfall, the consideration of any possible "chilling effect" does not render the board of trustees' interpretation arbitrary or unreasonable.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with the views expressed herein.

Affirmed in part; reversed in part and remanded.

McLAREN and COLWELL, JJ., concur.