FRANCENE WEYLAND *et al.*, Plaintiffs-Appellants, v. BRENT MANNING, *ex officio* Director of the Department of Natural Resources, Defendant-Appellee.

Second District   No. 2—98—1602

Opinion filed January 7, 2000.

Michael S. Talbett, of Lake Zurich, for appellants.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Karen J. Dimond, Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, Russel and Francene Weyland, appeal from the trial court's order denying their request for declaratory judgment and dismissing their complaint against the Department of Natural Resources (Department). The sole issue presented is whether the trial court correctly found that the Department did not violate the requirements of section 220.600(a)(9) of the Illinois Administrative Code (Code) (1 Ill. Adm. Code § 220.600(a)(9) (1994)). For the following reasons, we affirm the judgment of the trial court.

■ To facilitate our discussion of the facts and law applicable to this case, we begin with a brief overview of administrative rulemaking. Administrative rulemaking involves a three-step process. The first step, known as the first notice period, gives notice of the proposed rule and provides the public an opportunity to comment. Under section 5—40(b) of the Illinois Administrative Procedure Act (Act) (5 ILCS 100/5—40(b) (West 1994)), the public has 45 days from the date the notice is published in which to comment. If the agency proposing a rule receives a request for a public hearing during the first 14 days of the first notice period from 25 interested persons, the agency is required to hold a public hearing. 5 ILCS 100/5—40(b)(5) (West 1994).

At the end of the first notice period, the agency must submit certain information to the Joint Committee on Administrative Rules (JCAR) in a document called a second notice. 5 ILCS 100/5—40(c) (West 1994). JCAR is a bipartisan, bicameral legislative support services agency that reviews proposed and existing rules as well as agencies' compliance with the rulemaking process. 25 ILCS 130/1—5, 2—1 (West 1998).

The second notice period is also known as the legislative review period. R. Kane, *Specific Rulemaking Procedures in Illinois*, in Illinois Administrative Law § 5.19 (Ill. Inst. For Cont. Legal Educ. 1991). During this time, JCAR reviews the second notice submitted by the agency. The Code sets forth certain requirements that a second notice must meet in order for JCAR to accept it. 1 Ill. Adm. Code § 220.600 (1994). If the second notice is not satisfactory, JCAR may reject it. 1 Ill. Adm. Code § 220.600(a) (1994). After reviewing the second notice materials, JCAR may submit questions to the agency concerning the rulemaking. 1 Ill. Adm. Code § 220.700(b) (1994). Upon completion of its review, JCAR will file either a certification of no objection, a statement of recommendation that the agency pursue some further action, a statement of objection to the proposed rule, or a statement prohibiting the filing of a proposed rule. 1 Ill. Adm. Code § 220.1000 (1994).

The third and final step is adoption of the rule. An agency may file a proposed rulemaking for adoption after (1) the second notice period has expired, (2) the agency has received a certification of no objection from JCAR, or (3) the agency has responded to a statement of objection from JCAR. 1 Ill. Adm. Code § 220.1100 (1994).

Turning to the facts of this matter, the record reveals that plaintiffs opposed a rule promulgated by the Department pertaining to Griswold Lake, a 144-acre body of water located in McHenry County. In 1972, the Department's predecessor, the Illinois Department of Conservation, enacted a rule restricting the use of motors greater than 10 horsepower on Griswold Lake. This rule remained in effect until May 1995, when the Department removed the restriction. Soon after lifting the restriction, the Department received petitions from citizens asking that the restriction be reinstated. In July 1995, the Department proposed an emergency rule prohibiting the use of motors greater than 10 horsepower on Griswold Lake.

Plaintiffs own property on Griswold Lake. After the Department lifted the horsepower restriction, they purchased boating equipment with greater than 10-horsepower motors. Consequently, they opposed reinstating the rule because it would prohibit them from using their new equipment on Griswold Lake.

A public hearing on the proposed emergency rule took place on

July 17, 1995. Plaintiff Francene Weyland attended the hearing and voiced her opposition to the proposed rule. In August 1995, the Department announced its intention to permanently prohibit the use of motors greater than 10 horsepower. The Department published notice of the proposed permanent rule on September 8, 1995.

By letter dated October 5, 1995, plaintiffs' attorney requested a public hearing on the proposed rule. The Department denied that request.

On October 23, 1995, plaintiffs, through their attorney, submitted a letter to the Department containing 23 comments, criticisms, and suggestions in opposition to both the proposed rule and the Department's denial of their request for a hearing. The gist of plaintiffs' letter was that the Department should limit the use of motors greater than 10 horsepower to certain times of the day and certain areas of the lake rather than impose a blanket ban on such motors.

JCAR recommended that the Department meet with interested Griswold Lake residents and try to reach an agreement on the horsepower restrictions. A meeting took place on November 16, 1995. Plaintiffs' attorney was among those present at the meeting. No agreement was reached.

JCAR received and accepted the Department's second notice on November 22, 1995. The Department adopted the rule prohibiting the use of motors greater than 10 horsepower on Griswold Lake, which went into effect January 12, 1996. 20 Ill. Reg. 750 (January 12, 1996).

■ Plaintiffs argue that the Department's second notice was deficient in three respects: (1) it failed to list their 23 comments in opposition to the proposed rule; (2) it did not adequately evaluate their comments; and (3) it failed to inform JCAR that plaintiffs had requested a public hearing. Section 220.600 of the Code sets forth the requirements for a second notice. 1 Ill. Adm. Code § 220.600 (1994). Plaintiffs contend the Department failed to satisfy subparagraph 9 of section 220.600, which requires the second notice to include:

"(9) An evaluation of all comments received by the agency concerning the proposed rulemaking during the first notice period pursuant to Section 5—100(e)(2) of the Act. This evaluation need not include an evaluation of any questions raised by the Joint Committee. The failure of an agency to evaluate, pursuant to this Section, the comments received will be deemed to be an incomplete second notice. The evaluation must include the following information:

(A) a list of all persons or organizations making comments on the proposed rulemaking;

(B) a list of specific criticisms, suggestions and comments

raised by interested persons, and the agency's analysis of each of these criticisms, suggestions and comments;
  (C) any changes made to the rules by the agency as a result of criticisms, suggestions and comments made by interested persons; and
  (D) the names of all the persons or organizations requesting a public hearing and the date of any public hearings held on the proposed rulemaking." (Emphasis omitted.) 1 Ill. Adm. Code § 220.600(a)(9) (1994).

In its second notice, the Department stated as follows in response to the requirements of section 220.600(a)(9)(B):
  "Michael Talbett [plaintiffs' attorney] submitted several correspondence [*sic*] commenting in opposition to the 10 horsepower limit; Griswold Residents for Responsible Recreation requested a compromise on the 10 horsepower limit; all other persons commenting on the rulemaking were in support of the 10 horsepower limit.
  As to comments in opposition to the proposed rule, the Department analyzed such comments and concluded that such comments did not provide a sufficient basis upon which to withdraw or modify the rulemaking."

In response to section 220.600(a)(9)(D), which requires a listing of all persons who had requested a public hearing, the Department stated:
  "A public hearing was held on this issue on July 17, 1995. Additionally, the Department held a second meeting between representatives of each side of this issue on November 16, 1995 to discuss the rulemaking."

■ We first address plaintiffs' argument that the Department violated section 220.600 by failing to list plaintiffs' comments, suggestions, and criticisms concerning the proposed rule. The standard of review is *de novo*, because the issue involves the interpretation of an administrative rule. *Village of Downers Grove v. Illinois State Labor Relations Board*, 221 Ill. App. 3d 47, 53 (1991).

At trial, the Department presented testimony from Jack Price, legal counsel for the Department, and Vicki Thomas, executive director of JCAR. Both Price and Thomas testified that the Department submitted copies of all of the written comments it received, including plaintiffs', to JCAR. Thomas testified that JCAR had traditionally accepted this method of providing information about the public's comments.

We see no reason to exalt form over substance and require the Department to reiterate the public's comments when it has provided JCAR with copies of the original comments. It is undisputed that

JCAR received plaintiffs' comments. Thus, JCAR was advised of plaintiffs' opposition to the proposed rule and the alternatives plaintiffs suggested. Consequently, we agree with the trial court that the Department did not violate section 220.600 in this respect.

Next, we consider whether the Department's evaluation of plaintiffs' comments was so lacking as to violate the requirements of section 220.600(a)(9)(B). That section required the Department to provide "the agency's analysis of each of *** [the public's] criticisms, suggestions and comments." 1 Ill. Adm. Code § 220.600(a)(9)(B) (1994). It is plaintiffs' position that the Department's evaluation was nothing but "boilerplate" language, without any substantive analysis of plaintiffs' suggestions. The Department contends that its analysis was sufficient, given the uncomplicated nature of this rule.

Courts apply the same rules in interpreting administrative regulations as in construing statutes. *LaBelle v. State Employees Retirement System*, 265 Ill. App. 3d 733, 736 (1994). Thus, we first consider the language of the regulation. If it is clear, we need not look to other aids for construction. *LaBelle*, 265 Ill. App. 3d at 736. Generally, a reviewing court affords substantial deference to an agency's interpretation of its own regulations. *LaBelle*, 265 Ill. App. 3d at 735. Here, we are called upon to interpret not one of the Department's own rules but instead a rule that outlines the procedures the Department had to follow to promulgate one of its rules. Because the question before us is one of law, we are not bound by the agency's interpretation of the Code. See *Village of Downers Grove*, 221 Ill. App. 3d at 53.

The plain language of section 220.600(a)(9)(B) requires an agency to give its analysis of each of the public's criticisms, comments, and suggestions but does not require the agency to address each criticism, comment, and suggestion individually. Here, the Department stated that it analyzed all of the comments in opposition to the rule and concluded that none of them provided a sufficient basis to alter the proposed rule. In a different section of the second notice, the Department explained that the 10-horsepower restriction was necessary to protect the public, due to the small size and shallow depth of Griswold Lake and the high usage by both boaters and nonboaters.

Plaintiffs argue that the Department's brief evaluation of their comments did not give reasons why it rejected plaintiffs' suggestions. This argument is not persuasive because the purpose of the second notice is not to give feedback to the public. Rather, the primary purpose of the second notice, as indicated by section 5—40(c) of the Act (5 ILCS 100/5—40(c) (West 1994)) and section 220.600 of the Code (1 Ill. Adm. Code § 220.600 (1994)), is to provide JCAR with the information it needs to review a proposed rule. Vicki Thomas, executive director of

JCAR, testified that during the second notice period JCAR is most interested in whether an agency has changed the language of the rule from that published in the first notice. Thomas stated that, in this case, because the Department did not change the proposed rule, its analysis was acceptable. We agree that the Department's analysis was acceptable under the circumstances.

Plaintiffs express concern that if the trial court's ruling is affirmed, all agencies will copy the Department's brief analysis of public comments in opposition to proposed rules. We do not share in this fear. Our holding that the Department's analysis was sufficient is limited to the facts before us. A determination of whether a particular agency's evaluation is acceptable must be done on a case-by-case basis. The case before us was not complex and did not involve any changes to the text of the proposed rule. Therefore, the Department was not required to craft a lengthy analysis.

Plaintiffs cite several federal cases in support of their argument that the Department's analysis was fatally deficient. After reviewing these cases, we conclude that they are inapposite. They address "basis and purpose statements" in rules adopted by federal agencies, not second notices. See *St. James Hospital v. Heckler*, 760 F.2d 1460, 1469-70 (7th Cir. 1985); *Morales v. Lyng*, 702 F. Supp. 161, 163-64 (N.D. Ill. 1988). Therefore, we decline to follow them.

We find the case of *R.L. Polk & Co. v. Ryan*, 296 Ill. App. 3d 132 (1998), to be more analogous to the case at bar. In *Polk*, the plaintiff challenged the Secretary of State's compliance with sections 5—30(b) and 5—40(c) of the Act (5 ILCS 100/5—30(b), 5—40(c) (West 1996)), which require an agency to (1) give small businesses a chance to participate in the rulemaking process and (2) file a final regulatory flexibility analysis with its second notice. *Polk*, 296 Ill. App. 3d at 145. Under the Act, the analysis must summarize issues raised by small businesses during the first notice period, describe action taken on any alternatives to the proposed rule suggested by small businesses, and give reasons for rejecting any suggested alternatives. 5 ILCS 100/5—40(c) (West 1996).

In holding that the Secretary did comply with the applicable portions of the Act, the court noted that the plaintiff "had ample opportunity to and did participate in the rulemaking process. Although the Secretary might have done more, he did what was necessary under the rulemaking statutes to promulgate this rule." *Polk*, 296 Ill. App. 3d at 145-46. Likewise, in the case before us, plaintiffs did participate in the rulemaking process. It is also apparent from the record that the Department made efforts to reach a compromise but was unable to do so. The fact that the Department rejected plaintiffs' suggestions does

not render the rulemaking process invalid. While the Department could have done more in the way of addressing comments in opposition to the proposed rule, it did what was necessary to satisfy the requirements of section 220.600.

Plaintiffs' last argument is that the second notice was deficient because it did not inform JCAR of plaintiffs' request for a public hearing. Plaintiffs maintain that their request must be listed in the second notice. Section 5—40(b)(5) of the Act provides:

> "The agency shall hold a public hearing on the proposed rulemaking during the first notice period if (i) *** the agency finds that a public hearing would facilitate the submission of views and comments that might not otherwise be submitted or (ii) the agency receives a request for a public hearing, within the first 14 days after publication of the notice of proposed rulemaking in the Illinois Register, from 25 interested persons, an association representing at least 100 interested persons, the Governor, the Joint Committee on Administrative Rules, or a unit of local government that may be affected." 5 ILCS 100/5—40(b)(5) (West 1994).

It is undisputed that plaintiffs did not make their request until after the first 14 days of the first notice period. Vicki Thomas of JCAR testified that, in her view, only requests for a public hearing received during the first 14 days of the first notice period must be listed in the second notice. Jack Price of the Department testified that he had the same understanding as Thomas.

Again, we look to the plain language of the administrative rule. *LaBelle*, 265 Ill. App. 3d at 736. Here, the language of section 220.600 is clear. The requirement that agencies list all requests for public hearing is found in subsection (D) of section 220.600(a)(9), which requires agencies to give an "evaluation of all comments received by the agency concerning the proposed rulemaking during the first notice period" (1 Ill. Adm. Code § 220.600(a)(9) (1994)). 1 Ill. Adm. Code § 220.600(a)(9)(D) (1994). We are mindful that the Department and JCAR interpreted the rule so that it does not require the listing of hearing requests made outside the 14-day statutory period, but their interpretations are not binding on the court (see *Thomas M. Madden & Co. v. Department of Revenue*, 272 Ill. App. 3d 212, 215 (1995)). We conclude that the plain language of the rule required the Department to list the names of all persons who requested a public hearing during the first notice period. Section 220.600(a)(9) seeks information received during the first notice period generally, not the first 14 days of the first notice period. It should not substantially burden the Department to comply with this requirement. Thus, the Department should have included plaintiffs' request for a hearing in its second notice.

However, the Department's failure to do so does not invalidate the rule pertaining to Griswold Lake. We note that the Department provided JCAR with a copy of plaintiffs' October 23 letter, which discussed the Department's denial of their request for a public hearing. Thus, JCAR did receive information pertaining to plaintiffs' request. In addition, there is no evidence in the record that JCAR would have acted any differently on the proposed rule if the second notice had listed plaintiffs' request for a hearing. On the contrary, the evidence indicates that plaintiffs had ample opportunity to voice their opposition and did in fact take advantage of that opportunity. We will not invalidate an otherwise properly enacted rule because of a minor technical defect. Accordingly, we conclude that the trial court was correct in denying plaintiffs' request for declaratory judgment.

For the reasons stated, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

McLAREN and THOMAS, JJ., concur.