DANNY PORTMAN, Plaintiff-Appellant, v. THE DEPARTMENT OF HUMAN SERVICES *et al.*, Defendants-Appellees.

Second District No. 2—08—0406

Opinion filed August 28, 2009.

Craig B. Hammond, of Craig B. Hammond, Ltd., of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Ann C. Chalstrom, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

Plaintiff, Danny Portman, appeals from the trial court's affirmance of the decision of defendant the Illinois Department of Human Services (IDHS) denying plaintiff's application for child care assistance. Plaintiff contends that IDHS erred in determining that he was not eligible for child care assistance based upon the finding that he was not a custodial parent under IDHS's regulations (89 Ill. Adm. Code §50.210, amended at 28 Ill. Reg. 6895, eff. April 23, 2004). For the following reasons, we affirm.

## BACKGROUND

In November 2002, a judgment for dissolution of marriage was entered, dissolving plaintiff's marriage to Judy Portman. Incorporated into the judgment for dissolution was a marital settlement agreement executed by plaintiff and Judy, which provided that plaintiff and Judy were to share "joint, legal custody" of their two children. The agreement further provided that Judy was to be the "primary residential parent" of the children. According to the agreement, the parents were to equally divide parenting time with the children, and plaintiff was to pay Judy $500 per month in child support. Also incorporated into the judgment for dissolution was a joint parenting agreement executed by plaintiff and Judy. The joint parenting agreement provided that plaintiff and Judy were to have joint custody of their two children. The joint parenting agreement stated that the term "joint custody" was to mean, for purposes of the agreement, "that the parties will consult with each other and consider the other's views with respect to the rearing and overall well-being of the children, and on all matters which relate to, or may impact in any way upon, the children, and on the issues of the children's growth and development." The joint parenting agreement also designated Judy as the "primary residential parent" of the children and provided that plaintiff was to have parenting time with the children as delineated in the marital settlement agreement.

According to the findings of fact made by the IDHS hearing officer (which neither of the parties dispute), plaintiff received child care assistance from IDHS through September 30, 2006. At the end of August 2006, plaintiff filed an IDHS form entitled "Request for Redetermination Information." On October 26, 2006, IDHS issued to plaintiff a notice indicating that his request for "redetermination" had been

denied. The notice gave the following reason for denying plaintiff's request: "Per our records Judy Portman, who you pay child support to is the mother of the kids you are requesting care for." Plaintiff appealed the decision to deny him child care assistance.

A hearing was held with an IDHS hearing officer. During that hearing, plaintiff argued that he should receive child care assistance because the children live with him 50% of the time. In support of his position, plaintiff submitted a letter from Judy that stated she and plaintiff shared joint custody of their children. According to the letter, the arrangement between plaintiff and Judy provides that plaintiff has the children two days per week, Judy has the children two days per week, and plaintiff and Judy alternate the weekends. Plaintiff also submitted a letter from the director of early childhood education at the child care provider for his children, which stated that plaintiff regularly dropped off and picked up his children from the child care provider.

On June 8, 2007, IDHS issued its final decision. In the decision, IDHS adopted the hearing officer's findings of fact and determined that plaintiff was not eligible for child care assistance. IDHS's decision was based on the determination that Judy, rather than plaintiff, was the custodial parent under IDHS's regulations, because she was the primary residential parent.

Plaintiff filed a complaint for administrative review in the circuit court on July 9, 2007. Following briefing and a hearing, the trial court affirmed IDHS's decision. Plaintiff filed a motion for reconsideration, which the trial court denied. Plaintiff filed this timely appeal.

## ANALYSIS

■ Before addressing the merits of plaintiff's contentions, we note that despite the parties' beliefs that the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2006)) applies to IDHS's decision, it does not. An administrative agency's decision is subject to review under the Administrative Review Law only where "the Act creating or conferring power on such agency, by express reference, adopts the provisions of [the Administrative Review Law] or its predecessor, the Administrative Review Act." 735 ILCS 5/3—102 (West 2006). The statute granting IDHS the power to provide child care assistance and to specify the eligibility requirements for obtaining child care assistance appears in Article 9A of the Public Aid Code. 305 ILCS 5/9A—11 (West 2006). The Public Aid Code, however, makes the Administrative Review Law applicable only to Articles 3, 4, and 5 of the Public Aid Code. 305 ILCS 5/11—8.7 (West 2006). Thus, the Administrative Review Law does not apply to decisions regarding child

care assistance, because the Public Aid Code does not expressly make the Administrative Review Law applicable to those decisions. See *Chicago Title Land Trust Co. v. Board of Trustees*, 376 Ill. App. 3d 494, 499 (2007) (Administrative Review Law did not apply to decision made by the board of trustees where the governing statute made the Administrative Review Law applicable only to decisions of the board of appeals).

Where the Administrative Review Law does not apply, parties may still seek review of a final administrative decision through the common-law writ of *certiorari*. *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 427 (1990). The common-law writ of *certiorari* was developed to serve as a means for review of actions taken by a court or other tribunal exercising quasi-judicial functions, where no other means was available. *Stratton*, 133 Ill. 2d at 427. "The differences which once existed between the statutory and common law methods of reviewing decisions of administrative agencies have been all but lost, and now the nature and extent of judicial review is virtually the same under both methods." *Dubin v. Personnel Board*, 128 Ill. 2d 490, 498 (1989).

Numerous cases have held that a complaint for review of an administrative agency's decision, erroneously filed under the Administrative Review Law (or its predecessor), is sufficient to allow for judicial review pursuant to the common-law writ of *certiorari*. See *Homefinders, Inc. v. City of Evanston*, 65 Ill. 2d 115, 122 (1976) (holding that a complaint filed under the Administrative Review Law's predecessor, where the Administrative Review Law's predecessor did not apply, was sufficient to warrant treatment as a common-law writ of *certiorari*); *Nowicki v. Evanston Fair Housing Review Board*, 62 Ill. 2d 11, 15 (1975) (same); *Maddox v. Williamson County Board of Commissioners*, 131 Ill. App. 3d 816, 822 (1985) (holding that a complaint erroneously filed under the Administrative Review Law was sufficient for review under the common-law writ of *certiorari* because review by way of the writ of *certiorari* closely resembles review by way of the Administrative Review Law); *Quinlan & Tyson, Inc. v. City of Evanston*, 25 Ill. App. 3d 879, 883-84 (1975) (reviewing the case as though a writ of *certiorari* had been granted even though the complaint was erroneously filed under the Administrative Review Law's predecessor, because no useful purpose would be served by a remand of the instant case for the issuance of a writ of *certiorari*). In determining that the complaints erroneously filed under the Administrative Review Law's predecessor were sufficient to allow for review under the common-law writ of *certiorari*, our supreme court stated in *Homefinders* and *Nowicki*: " 'Labels have long since lost their significance in determin-

ing the legal sufficiency of a complaint in an ordinary action at law or in equity, and we see no reason why they should retain significance in actions to review the determinations of administrative agencies.' " *Homefinders*, 65 Ill. 2d at 122, quoting *Nowicki*, 62 Ill. 2d at 15.

Given the lack of significant differences between the Administrative Review Law and the common-law writ of *certiorari*, and given other courts' holdings that complaints erroneously filed under the Administrative Review Law are sufficient to allow for review under the common-law writ of *certiorari*, we determine that the fact that plaintiff sought review under the Administrative Review Law does not preclude judicial review of IDHS's decision.

We turn now to the merits of plaintiff's appeal. Section 9A—11(b) of the Public Aid Code (305 ILCS 5/9A—11(b) (West 2006)) confers on IDHS the power to establish the rules governing eligibility for child care assistance. Regulations established pursuant to that power provide that IDHS shall provide child care assistance to, among others, "parents and other relatives who are working outside the home." 89 Ill. Adm. Code §50.210(a)(1), amended at 28 Ill. Reg. 6899, eff. April 23, 2004. Under the regulations, "[t]he term 'parents' and the phrase 'parents or other relatives' refer to applicants for or recipients of child care services. They include a child's custodial biological or adoptive parent, stepparent, legal guardian, or caretaker relative within the fifth degree of kinship." 89 Ill. Adm. Code §50.210(b), amended at 28 Ill. Reg. 6900, eff. April 23, 2004.

There is no dispute that plaintiff is the biological father of the children for whom he sought child care assistance. Rather, the question presented by this case is whether plaintiff, who has joint legal custody of the children, is a custodial parent under section 50.210(b), so as to make him eligible to receive child care assistance. The interpretation of an administrative regulation is reviewed *de novo*. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008); *Weyland v. Manning*, 309 Ill. App. 3d 542, 546 (2000). Although we apply the *de novo* standard of review, an administrative agency's interpretation of its own regulations is accorded deference by the reviewing court unless it is clearly erroneous, arbitrary, unreasonable (*LaBelle v. State Employees Retirement System*, 265 Ill. App. 3d 733, 735-36 (1994)), or inconsistent with past interpretations (*Village of Fox River Grove v. Pollution Control Board*, 299 Ill. App. 3d 869, 877 (1998)). An agency's interpretation, however, is not binding on this court. *Weyland*, 309 Ill. App. 3d at 547; *Dean Foods Co. v. Illinois Pollution Control Board*, 143 Ill. App. 3d 322, 329 (1986).

As administrative rules and regulations have the force and effect of law, they are to be construed under the same standards that govern

the construction of statutes. *Madigan*, 231 Ill. 2d at 380. The primary objective in interpreting an agency's regulation is to ascertain and give effect to the intent of the agency. *Madigan*, 231 Ill. 2d at 380; *Radaszewski v. Garner*, 346 Ill. App. 3d 696, 700 (2003). The language of the regulation is the best indicator of the agency's intent. *Madigan*, 231 Ill. 2d at 380; *Radaszewski*, 346 Ill. App. 3d at 700. "In determining the plain meaning, we consider the regulation in its entirety, keeping in mind the subject it addresses and the apparent intent of the [agency] in enacting it." *Madigan*, 231 Ill. 2d at 380. Undefined terms are to be given their ordinary meanings. *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 473-74 (2005). Where the language of the regulation is clear and unambiguous, we must give effect to that language, without resort to extrinsic aids of interpretation and regardless of the agency's interpretation. See *Madigan*, 231 Ill. 2d at 380 (where language is clear, it must be given effect without resort to other aids of construction); *Weyland*, 309 Ill. App. 3d at 549 (following the plain language of an administrative rule, despite the agency's contrary interpretation); *Pace Realty Group, Inc. v. Property Tax Appeal Board*, 306 Ill. App. 3d 718, 728 (1999) ("in instances where the [agency] has erred as a matter of law, the reviewing courts are not required to give deference to the [agency]"); *People ex rel. Illinois Educational Labor Relations Board v. Oregon Community Unit School District 220*, 233 Ill. App. 3d 582, 586 (1992) (holding that the trial court did not err in interpreting an agency's order differently than the agency, because "courts are to exercise independent review of an agency's determination of legal questions, and, while deference will be accorded to the extent possible, the agency's resolution may not stand if it is erroneous"); *Dean Foods*, 143 Ill. App. 3d at 334 (holding that the agency erred where it ignored the plain meaning of its rule).

On the other hand, a regulation is ambiguous where it is capable of more than one reasonable interpretation. *Madigan*, 231 Ill. 2d at 381. If we find an ambiguity in the language of the regulation, we then turn to the purpose and necessity of the regulation, the evils sought to be remedied, and the goals to be achieved. *Madigan*, 231 Ill. 2d at 382. We are to view all of the provisions of an enactment as a whole. *Madigan*, 231 Ill. 2d at 382. If doubt remains, we may then take extrinsic matters into consideration to determine the intent of the regulation's drafters. *Madigan*, 231 Ill. 2d at 382.

IDHS determined during the administrative proceedings, and maintains on appeal, that under section 50.210(b), where the parents of a child are divorced, the custodial parent is the one designated as the primary residential custodian. According to plaintiff, IDHS's

interpretation improperly reads into section 50.210(b) a limitation that does not appear in the plain language. In his brief, plaintiff contends that the language of section 50.210(b) is plain in encompassing divorced parents who share joint legal custody, regardless of whether they are designated as primary residential custodians. During oral arguments, however, plaintiff's counsel acknowledged that section 50.210(b) could be considered ambiguous, but argued that in such a case, it should be interpreted to allow parents who share joint legal custody but are not primary residential custodians to receive child care assistance.

In the present case, we conclude that the language of section 50.210(b) is ambiguous because it is susceptible to more than one reasonable interpretation. First, one could reasonably conclude that the language of section 50.210(b) encompasses divorced parents who share joint legal custody, even if they are not designated as primary residential custodians. The term "custody" commonly refers to the "care, control, and maintenance of a child awarded by a court to a responsible adult." Black's Law Dictionary 412 (8th ed. 2004). Thus, a parent who is awarded such powers by a court can be said to be a custodial parent. See Webster's Third New International Dictionary 559 (1986) (defining "custodial" as "relating to or marked by guardianship or maintaining safely"). While the different types of custodial rights may be separated—*e.g.*, legal versus physical custody— section 50.210(b) does not distinguish between those custodial rights. Rather, section 50.210(b) simply uses the word "custodial," without any limiting language, indicating that the drafters did not intend to exclude divorced parents who enjoy some custodial rights but not all of them (for example, parents who enjoy legal custody but do not enjoy physical custody).

Joint custody, in general, refers to "[a]n arrangement by which both parents share the responsibility for and authority over the child at all times, although one parent may exercise primary physical custody." Black's Law Dictionary 412 (8th ed. 2004). Under Illinois law, the exact parameters of each parent's responsibility and authority under a joint custody arrangement must be delineated in a joint parenting agreement or joint parenting order. 750 ILCS 5/602.1 (West 2006). Thus, although joint custody arrangements may vary from family to family, a parent who shares joint legal custody, even if not designated as the primary residential custodian, is still responsible for some care, control, and maintenance of the child. Consequently, such a parent would be considered a "custodial parent" if the term is understood to mean a parent who provides care, control, and maintenance of a child, pursuant to a court order.

On the other hand, one could reasonably conclude that the language of section 50.210(b) does not encompass in the term "custodial parent" divorced parents who share joint legal custody but have not been designated as primary residential custodians. Section 50.210(b) refers to "a child's custodial biological or adoptive parent." "Parent" is singular, indicating that the drafters contemplated a definition of "custodial parent" that would apply to only one, but not both, of a child's biological parents. In a context where only one of the divorced parents may be considered the custodial parent, that parent is commonly understood to be the parent who is awarded either physical or residential custody. See Black's Law Dictionary 1144 (8th ed. 2004) (defining a "custodial parent" as "[t]he parent awarded physical custody of a child in a divorce"); see also Black's Law Dictionary 1183 (8th ed. 2004) (defining "physical custody" as "[t]he right to have the child live with the person awarded custody by the court.— Also termed residential custody"). Thus, under this interpretation of the term "custodial parent," a divorced parent who shares joint legal custody but has not been designated as the primary residential custodian would not be considered a custodial parent under the regulation.

■ Because we determine that section 50.210(b) is ambiguous, we consider the purpose and necessity of the regulation, the evils sought to be remedied, and the goals to be achieved. See *Madigan*, 231 Ill. 2d at 382. In addition, we are to construe administrative regulations "together with the statute pursuant to which they were adopted in order to insure a sound and effective legislative program." *Marion Hospital Corp. v. Illinois Health Facilities Planning Board*, 324 Ill. App. 3d 451, 456 (2001). In section 9A—11(b) of the Public Aid Code (305 ILCS 5/9A—11(b) (West 2006)), the General Assembly directed IDHS to provide child care assistance "[t]o the extent resources permit" and to specify by rule the eligibility requirements for receiving child care assistance. By allowing IDHS to provide child care assistance only "[t]o the extent resources permit," and by allowing IDHS to provide child care assistance to only those people who meet the eligibility requirements set by IDHS, the legislature indicated that the resources available for child care assistance are not infinite and thus their distribution should be limited. The General Assembly entrusted IDHS with the task of distributing the limited resources available for child care assistance.

Given this, we determine that the ambiguity in the term "custodial parent" in section 50.210(b) should be resolved in favor of IDHS's interpretation—that divorced parents who share joint legal custody but have not been designated as primary residential custodians are

not custodial parents under section 50.210(b). This interpretation better serves the purpose of efficiently distributing the limited resources for child care assistance. Under this interpretation, only one of the parents in a joint legal custody arrangement will be eligible for child care assistance, and it will be the parent with whom the children primarily live. This ensures that assistance will be given where necessary to allow children to attend child care, while also ensuring that the resources for child care assistance are not unnecessarily depleted by both parents in a joint custody arrangement seeking child care assistance for the same children.

Similarly, although plaintiff in the present case shares the parenting duties equally with Judy, not all joint custody arrangements provide for the same equal division of responsibilities. Rather, some parents who share joint legal custody may be afforded parenting time on a very limited basis—whether in the evenings, on weekends, or only for a day or two during the week—and therefore have little need for child care assistance. IDHS's interpretation would prevent the distribution of child care assistance to such parents, thereby saving limited resources for parents who bear the bulk of the parenting responsibilities.

Plaintiff's interpretation addresses none of these concerns and, in fact, would allow the limited resources available for child care assistance to be provided to all divorced parents who share joint legal custody of their children, regardless of how much time they spend parenting their children. Under plaintiff's interpretation, where the parents of a child share joint legal custody, both parents could apply for and receive child care assistance for the same child (assuming they met the other eligibility requirements), because both would be considered custodial parents. Certainly, providing assistance to both parents in such a situation would be contrary to the efficient management of child care assistance funds.

Moreover, we again note that we are to give an administrative agency's interpretation of its own regulations deference unless it is clearly erroneous, arbitrary, unreasonable (*LaBelle*, 265 Ill. App. 3d at 735-36), or inconsistent with past interpretations (*Fox River Grove*, 299 Ill. App. 3d at 877). This deference is given on the basis that the administrative agency charged with the administration of a statute is able to make informed judgments on the issues because of its experience and expertise. *Fox River Grove*, 299 Ill. App. 3d at 878. Given our determination that IDHS's interpretation is one of two reasonable interpretations of the language of section 50.210(b) and that IDHS's interpretation furthers the purpose of efficiently distributing the limited resources available for child care assistance, we cannot

conclude that IDHS's interpretation was either clearly erroneous, arbitrary, or unreasonable. We are unaware of any past interpretations of the term "custodial parent" as used in section 50.201(b) and thus cannot say that IDHS's interpretation is inconsistent with any past interpretations. Accordingly, IDHS's interpretation is entitled to deference.

During oral arguments, plaintiff emphasized that his and Judy's marital settlement and joint parenting agreements referred to Judy as the "primary residential parent" rather than as the "primary residential custodian." We do not believe that this distinction makes a difference in our analysis, as our decision rests not on the particular labels assigned to the parents, but upon the deference to be accorded to an agency's reasonable interpretation of its own regulation, and upon the determination that the purpose of efficiently distributing limited resources is best served by providing child care assistance, in joint custody situations, to only the parent whose residence has been designated as primary.

In sum, we hold that, in light of the deference to be given to an agency's interpretation of its own regulation and the fact that IDHS's interpretation best serves the purpose of efficiently distributing the limited resources available for child care assistance, the term "custodial parent" as used in section 50.210(b) does not encompass divorced parents who share joint legal custody but who have not been designated as primary residential custodians. Consequently, we affirm IDHS's decision denying plaintiff child care assistance.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Lake County circuit court.

Affirmed.

BOWMAN and BURKE, JJ., concur.